Statement of the case.

HARRY SHAFER *v.* THE STATE.

7 239
30 544
7 239
39 660

1. CHALLENGE FOR CAUSE. — Conscientious scruples in regard to the infliction of death as a punishment for crime constitute cause for the challenge of a juror in a capital case, even though the juror limit his scruples to cases in which circumstantial evidence is relied upon for a conviction.

2. BURDEN OF PROOF. — Upon the issue of guilty or not guilty, the burden of proof never shifts from the State to the defendant, but remains upon the State throughout the trial.

3. CONFESSIONS, though made in arrest or jail, are evidence against the maker if he made them voluntarily and after being cautioned that they might be used against him.

APPEAL from the District Court of Gregg. Tried below before the Hon. J. C. ROBERTSON.

The indictment charged Henry Shafer, the appellant, with the murder of Houston Heard, on December 1, 1878, by striking him on the head with a stick of wood.

The appellant and the deceased, as well as one William Hester, commonly called Wild Bill, and who is implicated by the evidence, though not on trial, were negroes, who, it is inferable from the evidence, were laborers in the neighborhood of Longview in Gregg County. Appellant and the deceased left Longview together, on foot, taking the track of the Texas and Pacific Railroad towards Marshall. This was about an hour after sunrise on the day of the homicide. A few minutes after they started, Hester followed them, making inquiry for them of a witness, and walking off rapidly to overtake them. Very soon afterwards all three were seen sitting down together near the track, and afterwards proceeding together along the track. In an hour or so, Heard was found dead in a " cut," about a mile and a half from Longview. His head was crushed in, and a thick bludgeon was lying near him, with hair and blood upon it. The tracks of two men led from the body up the bank of the cut, indicating the route taken by those who committed the deed, and, being speedily fol-

lowed, led the officers first to Hester, and before night to the appellant. One of the tracks at the cut was identified as the appellant's; and on his person was found a pocket-book belonging to the wife of the deceased, who had confided it to her husband the day previously, with some $70 of their joint money. When overtaken and summoned to surrender, the defendant ran, but was stopped by a shot which inflicted a slight flesh-wound in his shoulder. After his wound was dressed, and while he was in custody, he persisted in making a statement to the officer, though repeatedly warned that what he should say might be used against him. He said that Hester killed the deceased with the bludgeon, because the deceased was advancing on him (Hester) with a knife, they having renewed a quarrel commenced the previous evening about $2.50 due the deceased by Hester. Defendant said that he tried to keep down the fuss between Hester and the deceased, and was sitting down twenty steps from them when they encountered each other; that he and Hester took to the woods after the blow was struck by the former. He attempted no explanation of his flight without giving information of the homicide, nor in any way accounted for his possession of the pocket-book found upon him.

The jury returned a verdict of murder in the first degree, and judgment of death was rendered against the appellant. The opinion of this court discloses all special matters of significance.

*Pope & Pope*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. This appeal is from a judgment of conviction of murder in the first degree, after a motion for new trial overruled. Several questions are presented by the record, a discussion of which would not tend to settle any proposition of law, or determine any legal right of the

appellant. Such matters as are considered of any moment will be noticed so far as deemed necessary, under all the facts and circumstances disclosed by the record.

Whilst the jury was being formed for the trial below, one Campbell, returned on the special *venire*, on his examination as a juror, in answer to a question by the State's counsel, stated that he had conscientious scruples in regard to the punishment of death for crime, in cases dependent on circumstantial testimony, whereupon he was stood aside by the court; and this action of the court was excepted to by the defendant's counsel. One of the grounds of challenge for cause specified in the Code is, " that the juror has conscientious scruples in regard to the infliction of the punishment of death for crime." Rev. Code Cr. Proc., art. 636, cl. 11 (identical with cl. 7, art. 3041, Pasc. Dig., which was in force at the time of the trial below). The court did not err in standing the juror aside; he was, under the law, liable to challenge for cause when offered as a juror for the trial of a capital case. No other objection appears to have been taken to any juror, or to any other proceeding in the formation of the jury, and none is perceived.

Complaint is made that the court erred in admitting certain testimony of the State's witness Davis. The matter is stated in the bill of exceptions substantially as follows : " The court allowed the State's counsel to ask the witness Edmund Davis what had been said to him by one Wm. Hester on the morning that witness saw defendant, in reference to where said Hester was going." By considering the objection in connection with the testimony of this witness, as set out in the statement of facts, it will be seen that it was altogether unimportant one way or the other, and could have had no appreciable value upon the verdict. Still we are of opinion the court did not err in admitting it for what it was worth as tending to throw light upon the transactions which were then undergoing investigation.

The general charge of the court was excepted· to at the trial, and certain special instructions were 'asked by the defendant's. counsel, which the court· refused to give to the jury; and to the refusal a bill· of exceptions was taken.     There is but one matter relating to the charge as given, or those refused, which it is deemed important to notice, and this one would not be mentioned except that it might hereafter afford an erroneous precedent.     The court, in treating of implied malice in connection with the subject of murder in the second degree, uses this language : " The presumption of implied malice arises in the absence of those circumstances which show express malice ; and the burden of proof is then shifted on the defendant, and it devolves upon him to show that the act was committed under such circumstances as would reduce the offence from murder to manslaughter, negligent, excusable, or justifiable homicide.''

It would be too broad an assertion to say that in criminal trials the burden of proof never, under any state of case, is shifted. from the State to the defendant ; but in so far as the. question of guilt of one who stands before the court. on a plea of not guilty is concerned it may be truly said that the burden of proof never shifts, but rests upon the State throughout to fasten guilt upon the accused by evidence sufficient to satisfy the minds of the jury beyond a reasonable doubt that he is guilty, else under the law he is entitled to be acquitted.     *Ake* v. *The State*, 6 Texas Ct. App. 398.

Under the circumstances detailed in. evidence in the present case, and hedged about as it is by preceding and succeeding portions of the charge, it is hardly possible that the jury could have been misled by the extract above set· out. With this unimportant defect, the charge is an elaborate and carefully written enunciation of the law, and, taken as a whole, gave the jury appropriate instructions as to every phase of the testimony on murder in the second degree, manslaughter, and self-defence, but especially as to that portion of the charge which relates to murder in the first

degree; as to which no objection is made, nor is any perceived. The jury were also instructed on the subject of circumstantial testimony, and the degree of certainty required by law to warrant a conviction on this character of evidence, as well as on the presumption of innocence and reasonable doubt, as to murder in the first degree as well as between the degrees and on the whole case.

The following testimony of statements of the defendant was admitted over objection as not having been voluntarily made. It seems that after the homicide the defendant was intercepted near his home by a deputy-sheriff and another person, and, when called on to surrender, ran, and was fired on and wounded, — a flesh-wound in the shoulder. This occurred on the night following the homicide, which had occurred in the morning. The defendant was arrested near his home, in Harrison County, and taken to Longview in Gregg County, and the deputy-sheriff sent for a doctor to dress his wound. The deputy, speaking of the defendant, in testifying, says he " seemed to want to talk, and commenced talking, when I warned him and cautioned him not to say any thing, for if he did that it would be used against him. He said he wanted to tell all about it. I again warned him that what he said would be used against him." And the witness proceeded to recount a trouble between the deceased and another man on the evening previous to the killing, and which, he said, was renewed between them just before the killing took place, and that this certain person struck the blow that killed the deceased.

If there was error here, it certainly must have enured to the benefit of the defendant. If the other person implicated had been on trial, he might have objected to the statement; but not so the defendant. But in so far as the question whether the statements of the defendant were voluntarily made or not is concerned, they were admissible under the statute. A confession, though made by one in jail, or other place of confinement, may be used in evidence against

him, *if made voluntarily, after having been first cautioned that it may be used against him.*  Rev. Code Cr. Proc., art. 750; Pasc. Dig., art. 3127, note 761.  The testimony of the deputy-sheriff, as above set out, shows that the statements of the defendant were voluntarily made, and after he had first been cautioned that they would be used against him.

It seems that the defendant, by this statement, got its full benefit, not only by getting it before the jury, but by having the subject submitted under an appropriate instruction. Under these circumstances, we are unable to see that his rights have been prejudiced or that he has any just grounds of complaint.  In this respect, as well as in others, the action of the court was most favorable towards the defendant. In fact, the whole case shows a scrupulous regard for the rights of the defendant.

It is intimated in the assignment of errors that the indictment only charges manslaughter, and not murder.  No defect in the indictment has been pointed out at any stage of the proceedings, so far as the record shows, and none is apparent; on the contrary, it seems to be sufficient to support a conviction for murder in the first degree.  It is shown to have been returned into court by the grand jury in a body, a quorum being present, and charges murder with express malice.

The sufficiency of the evidence is called in question by the motion for a new trial.  From the testimony, and from the charge of the court on the subject of more than one person acting together in the commission of crime, it is apparent that there was another person besides the defendant present and participating in taking the life of the deceased; and if a motive for the commission of the deed were otherwise wanting, we are of opinion that any apparent defect was supplied by the testimony of the wife of the deceased as to his money and pocket-book, and that of the deputy-sheriff that this same pocket-book was found on the

person of the defendant at the time of his arrest. At any rate, we are not prepared to say that the jury were not warranted by the testimony in finding that the money of the deceased formed an important element in his taking off. We are of opinion that there is no room for doubt that the deceased came to his death by violent means, and that, from the circumstances proved, the defendant was one of the persons present at the time. As to whether he participated in the act of murder or not, the question was fairly submitted to the jury by the charge of the court, and on this branch of the case we are unable to say that the verdict of the jury is without a sufficient amount of legal evidence to support it. The whole case, both as to the law and the testimony, after the jury had returned a verdict of guilty of murder in the first degree, was passed in review on the hearing of the motion for a new trial, and the court, at this solemn stage of the proceeding, refused to set the verdict aside and grant a new trial; and, after a careful consideration of the case as presented in the record before us, we are constrained to say that the life of the accused has been forfeited by due course of law.

The judgment of the District Court is affirmed.

*Affirmed.*